UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

S.M.S.R., *et al.*,

    Plaintiffs,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,

    Defendants.

Civil Action No. _____

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE UNDER PSEUDONYMS

Pursuant to Local Rule 40.7(g) for the United States District Court for the District of Columbia and Rules 7, 10, and 15(a) of the Federal Rules of Civil Procedure, prospective Plaintiffs S.M.S.R. and R.S.P.S. (collectively, "Individual Plaintiffs") respectfully request leave to file their Complaint and proceed in this action using pseudonyms. Individual Plaintiffs, who are a young mother and her son seeking asylum in the United States, request leave to file anonymously in order to preserve the confidentiality of their sensitive personal information and to protect themselves and their families from the potential for retributive violence.

### BACKGROUND

Individual Plaintiffs are migrants from Honduras seeking asylum in the United States. They are filing a Complaint concurrently on behalf of themselves and a putative class of similarly situated migrants, together with Plaintiff Capital Area Immigrants' Rights Coalition ("CAIR Coalition") and Plaintiff Refugee and Immigrant Center for Education and Legal Services, Inc. ("RAICES"). The Complaint requests an order from this Court enjoining the Government's recently announced rule barring individuals from eligibility for asylum if they

Case 1:18-cv-02838-RDM   Document 1-1   Filed 12/03/18   Page 2 of 9

entered the United States along the southern border outside approved ports of entry. *See* Compl. ¶¶ 5-6.

Specifically, on November 8, 2018, Acting Attorney General Matthew Whitaker and Secretary of Homeland Security Kirstjen Nielsen issued the Rule challenged in the Complaint. *See Aliens Subject to a Bar on Entry Under Certain Presidential Proclamations; Procedures for Protection* Claims, 83 Fed. Reg. 55,934 (Nov. 9, 2018) (the "Rule"). The Rule provides that all persons subject to a presidential order or proclamation issued pursuant to the Immigration and Nationality Act ("INA") § 212(f), 8 U.S.C. § 1182(f), or INA § 215(a)(1), 8 U.S.C. § 1185(a)(1), will be ineligible for asylum. 83 Fed. Reg. at 55,934 (Nov. 9, 2018).

On the following day, November 9, 2018, the President signed Proclamation Number 9,822, the "Presidential Proclamation Addressing Mass Migration Through the Southern Border of the United States." 83 Fed. Reg. 57,661 (Nov. 9, 2018) (the "Proclamation"). The Proclamation suspended the entry of individuals who crossed into the United States from Mexico without presenting themselves for inspection at a designated port of entry. *See id.* The Proclamation was to be applied prospectively for 90 days after the date of issuance or until the date of an agreement by which the United States is permitted to remove noncitizens to Mexico, whichever occurs first. *See id.* § 1. In addition, the Proclamation directs that the Secretary of State, the Attorney General, and the Secretary of Homeland Security must submit a joint recommendation to the President within 90 days after the Proclamation's date of issuance addressing whether the suspension on entry should be extended or renewed. *See id.* § 2(d).

Together, the Rule and Proclamation bar noncitizens from obtaining asylum if they enter the United States by crossing the country's southern border other than at a designated port of entry. As set forth in greater detail in the Complaint and declarations in support of Plaintiffs'

Motion for Temporary Restraining Order, Individual Plaintiffs fled Honduras and are seeking asylum in the United States to escape violence and repeated death threats to which they were subjected in Honduras at the hands of Mara Salvatrucha ("MS-13") gang members. Compl. ¶ 12; Ex. 1, Pls. Mot. for TRO (Decl. of S.M.S.R.) ¶¶ 3-9, 39-43 ("S.M.S.R. Decl."); Ex. 2, Pls. Mot. for TRO (Decl. of R.S.P.S.) ¶¶ 2, 19-20 ("R.S.P.S. Decl."). Individual Plaintiffs entered the United States at the southern border outside of an approved port of entry on November 10, 2018. Compl. ¶ 14; S.M.S.R. Decl. ¶ 30. When Individual Plaintiffs entered, the Rule was in force. Accordingly, Plaintiff S.M.S.R. was informed that she was ineligible for asylum because she entered outside of a port of entry. Compl. ¶ 15; S.M.S.R. Decl. ¶ 35. She was told that, in order to remain in the United States, she would have to meet a higher standard, Compl. ¶ 15; S.M.S.R. Decl. ¶ 37, to show that she was entitled to withholding of removal.

## LEGAL STANDARD

Although a complaint typically must state the names of the parties, *see* Fed. R. Civ. P. 10(a), federal courts have the discretion to allow parties to proceed anonymously when "the impact of the plaintiff's anonymity" outweighs "the public interest in open proceedings and on fairness to the defendant." *Nat'l Ass'n of Waterfront Emp'rs v. Chao*, 587 F. Supp. 2d 90, 99 (D.D.C. 2008). To determine whether anonymity is warranted, this Court has considered the following five factors: (1) whether the party's request is intended "to preserve privacy in a matter of a sensitive and highly personal nature," (2) whether "identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties," (3) "the ages of the persons whose privacy interests are sought to be protected," (4) "whether the action is against a governmental or private party," and (5) "the risk of unfairness to the opposing party" as a result of anonymity. *Id.*; *see also United States v. Hubbard*, 650 F.2d 293, 317-21 (D.C. Cir. 1980) (applying a balancing test with factors including "the strength" of the property

3

and privacy interests involved, as well as "the possibility of prejudice" to those opposing disclosure).

## ARGUMENT

All of the relevant factors supporting anonymity weigh in Plaintiffs' favor. Individual Plaintiffs have provided and will continue to provide highly sensitive personal information throughout this lawsuit, including in the Complaint and the concurrently filed declarations of Individual Plaintiffs supporting Plaintiffs' Motion for Temporary Restraining Order. Individual Plaintiffs would face significant risks, including physical harm and death, if their identities were publicly revealed. In contrast, allowing Individual Plaintiffs to proceed anonymously does not risk any unfairness to Defendants, all of whom are Government agencies or Government officials sued in their official capacities. The public interest also favors allowing Individual Plaintiffs' claims to proceed without exposing their identities.

### I. Individual Plaintiffs' claims are sensitive and highly personal in nature.

Individual Plaintiffs' claims involve sensitive and highly personal information, such that their names should not be exposed to the public. That information is particularly sensitive due to the serious risks of violence that Individual Plaintiffs will face if their identities are revealed.

Plaintiff S.M.S.R. is a young woman from Honduras. Compl. ¶ 12; S.M.S.R. Decl. ¶ 1. Plaintiff R.S.P.S. is her fourteen year old son. During S.M.S.R.'s credible fear interview in detention, an Asylum Officer told her that she is subject to a presidential proclamation and therefore ineligible for asylum. Compl. ¶ 15; S.M.S.R. Decl. ¶ 35. Details regarding her interview and asylum circumstances are set forth in her declaration; she and her fourteen-year-old minor son, Plaintiff R.S.P.S., fled Honduras due to repeated death threats from the MS-13 gang. Compl. ¶ 12; S.M.S.R. Decl. ¶¶ 2, 5. MS-13 gang members threatened S.M.S.R.'s life four to five times in the past eight months, stating they would kill her and her son if she would

4

not enter into a sexual relationship with the gang and if her son would not join the gang. Compl. ¶¶ 12, 16; S.M.S.R. Decl. ¶¶ 4-5; R.S.P.S. Decl. ¶¶ 9, 13. MS-13 members have beaten Plaintiff R.S.P.S. on three occasions, leaving him with bruises on his arms and chest and a scar on his arm, because he would not join the gang. Compl. ¶ 17; S.M.S.R. Decl. ¶¶ 10-14; R.S.P.S. Decl. ¶¶ 3, 6-9. Plaintiff S.M.S.R. knows that the Honduran police would not be willing or able to help her and her son, because she has seen police officers receiving bribes from gang members and greeting gang members in a friendly way. Compl. ¶¶ 13; S.M.S.R. Decl. ¶¶ 16-23. Plaintiff R.S.P.S. also knows that the Honduran police would not help him and his mother, given their past willingness to ignore or participate in crime. Compl. ¶ 18; R.S.P.S. Decl. ¶¶ 15-19. MS-13 gang members have pictures of Plaintiff S.M.S.R. and have said they would find her if she left the area. Compl. ¶ 13; S.M.S.R. Decl. ¶ 26; R.S.P.S. Decl. ¶ 19.

These experiences and immigration circumstances, as further detailed in Individual Plaintiffs' Complaint and declarations, are "sensitive and highly personal in nature," such that their identities should not be disclosed. *Chao*, 587 F. Supp. at 99. Protecting Individual Plaintiffs' privacy also is consistent with the asylum regulations, which state that information contained in an asylum application "shall not be disclosed without the written consent of the applicant, except as permitted by this section or at the discretion of the Attorney General." 8 C.F.R. § 208.6(a).

## II. Public knowledge of Individual Plaintiffs' claims would create a risk of physical or mental harm.

Individual Plaintiffs face a serious risk of retaliatory physical and mental harm if their identities are disclosed through this litigation. As asylum seekers, Individual Plaintiffs are "particularly vulnerable" to retaliation if [their] true names are revealed. *Al Otro Lado, Inc. v. Nielsen*, Case No. 17-cv-02366-BAS-KSC, 2017 WL 6541446, at *6 (S.D. Cal. Dec. 20, 2017).

5

Individual Plaintiffs already have faced physical violence at the hands of the MS-13 gang in their country of origin, Honduras, and exposing their identities would leave them vulnerable to the additional risk of retaliatory violence in the United States or elsewhere. Individual Plaintiffs reasonably fear that they could face retaliatory physical or mental harm if their identities were to become public. In particular, both Individual Plaintiffs fear that MS-13 will seek them out, consistent with prior threats, if they learn that S.M.S.R. and R.S.P.S. have fled Honduras and if their identities are disclosed in this litigation.

Numerous courts have allowed plaintiffs to proceed anonymously where doing so would protect the plaintiffs or their families from similar risks of violence. *See Doe v. U.S. Dep't of State*, No. 15-cv-01971, 2015 WL 9647660, at *3 (D.D.C. Nov. 3, 2015) (allowing plaintiff to proceed pseudonymously in order to avoid "disclosing information that would help people who oppose the U.S.-led reconstruction efforts [in Iraq], such as ISL members, to find [him] and kill him and his family"); *Doe v. Gonzales*, 484 F.3d 445, 446 (7th Cir. 2007) (allowing petitioner to litigate pseudonymously "because of his fear that if he is returned to El Salvador he will be killed"); *Doe v. INS*, 867 F.2d 285, 286 n.1 (6th Cir. 1989) ("Although the use of pseudonyms is not favored, we have resorted to it here to protect the petitioner's family, who remain in China, from possible reprisals." (citation omitted)).

### III. Anonymity is particularly important given that a minor child is involved.

Protecting Individual Plaintiffs' anonymity is all the more warranted because Plaintiff S.M.S.R. wishes to protect her minor child, Plaintiff R.S.P.S, from the violence he will face if Individual Plaintiffs' names are disclosed. *See U.S. Dep't of State*, 2015 WL 9647660, at *3 (noting that anonymity is favored "when the interests of minors are involved because children are perceived as more vulnerable or because the child whose privacy is at stake has not chosen

for himself or herself to pursue the litigation" (internal quotation marks and citation omitted)). As detailed in their concurrently-filed declarations, Individual Plaintiffs both will face dire threats of retaliation from MS-13 in the event their identities are exposed in litigation or they are forcibly returned to Honduras, where MS-13 gang members repeatedly threatened to kill them because Plaintiff S.M.S.R. refused to become a gang "wife" and because Plaintiff R.S.P.S. refused to join the gang. Compl. ¶ 12; S.M.S.R. Decl. ¶¶ 4-5; R.S.P.S. Decl. ¶¶ 9, 13. Plaintiff R.S.P.S. already has been beaten by the gang three times for the same reasons. Compl. ¶ 17; S.M.S.R. Decl. ¶¶ 10-14; R.S.P.S. Decl. ¶¶ 3, 6-9. This Court has recognized the paramount importance of granting anonymity where, as here, it is necessary to protect the interests of a minor child. *See U.S. Dep't of State*, 2015 WL 9647660, at *3.

### IV. Defendants are Government officials and agencies.

Allowing Individual Plaintiffs to proceed pseudonymously is especially appropriate in this case because Defendants are Government officials sued in their official capacities. "When a plaintiff challenges the government or government activity, courts are more like[ly] to permit plaintiffs to proceed under a pseudonym than if an individual has been accused publicly of wrongdoing." *Chao*, 587 F. Supp. 2d at 99 n.9 (internal quotation marks omitted); *John Does 1-5 v. McCrory*, No. 13-CV-711, 2014 WL 29352, at *2 (M.D.N.C. Jan. 3, 2014) ("Plaintiffs bring this action against a governmental party, which weighs in favor of anonymity." (citation omitted)). The Court should follow that approach here.

### V. Defendants will not be prejudiced if Plaintiffs proceed anonymously.

Defendants will not suffer any prejudice if Individual Plaintiffs are allowed to proceed anonymously. As discussed above, Defendants are Government officials and agencies and thus are unlikely to be prejudiced by the non-disclosure of Individual Plaintiffs' specific identities.

The primary dispute turns on the legality of the Rule, and the Government's ability to defend that Rule should not be affected by its knowledge of Plaintiffs' identities.[1]

For the same reason, the public interest is not served by disclosing Individual Plaintiffs' identities. While the public has an interest in seeing important asylum questions litigated, that interest in no way demands that the public obtain sensitive information about the litigants themselves. *See, e.g., J.W. v. D.C.*, 318 F.R.D. 196, 202 (D.D.C. 2016) (permitting student to file anonymously because court documents would allow the public to understand those decisions and hold defendant accountable "regardless of whether the public can identify the parents of the particular student at issue"). Indeed, it would actually harm the public interest to disclose such information because exposing Individual Plaintiffs' identities would "create[] an unnecessary risk of chilling the willingness of asylum seekers from litigating important issues like the ones raised in this case." *Al Otro Lado*, 2017 WL 6541446, at *7. And Individual Plaintiffs' significant interest in maintaining their anonymity is more than sufficient to overcome any general presumption in favor of open proceedings. *See Horowitz v. Peace Corps*, 428 F.3d 271, 278 (D.C. Cir. 2005) ("If there is no public interest in the disclosure of certain information, 'something, even a modest privacy interest, outweighs nothing every time.'" (citation omitted)).

---

[1] To the extent that Individual Plaintiffs' identities are already known to Defendants in connection with their asylum applications and detentions, allowing Individual Plaintiffs to proceed pseudonymously would not risk any unfairness to the opposing party. *Chao*, 587 F. Supp. 2d at 99; *see also U.S. Dep't of State*, 2015 WL 9647660, at *3 (Government was unlikely to be prejudiced by plaintiff's pseudonymous filing because it had "long been in possession" of plaintiff's immigration application and was "fully apprised of all relevant information"); *Al Otro Lado*, 2017 WL 6541446, at *6 (finding no prejudice to Government defendants who "know the Individual Plaintiffs' names" and "have the information they need to defend against the claims").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the instant motion and permit Individual Plaintiffs to file their Complaint and proceed as parties in this case using pseudonyms.

December 3, 2018

HOGAN LOVELLS US LLP

By: /s/

Manoj Govindaiah
Curtis F.J. Doebbler*
RAICES, Inc.
1305 N. Flores Street
San Antonio, TX 78212
Telephone: (210) 222-0964
Facsimile: (210) 212-4856
manoj.govindaiah@raicestexas.org
curtis.doebbler@raicestexas.org

*pro hac vice application forthcoming*

*Counsel for Plaintiff Refugee and Immigrant Center for Education and Legal Services, Inc.*

Neal K. Katyal (Bar No. 462071)
T. Clark Weymouth (Bar No. 391833)
Craig A. Hoover (Bar No. 386918)
Justin W. Bernick (Bar No. 988245)
Colleen Roh Sinzdak* (Bar No. 1015344)
Zachary W. H. Best (Bar No. 1003717)
Mitchell P. Reich* (Bar No. 1044671)
Elizabeth Hagerty (Bar No. 1022774)
Kaitlin Welborn (Bar No. 88187724)
555 Thirteenth Street NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
neal.katyal@hoganlovells.com
t.weymouth@hoganlovells.com
craig.hoover@hoganlovells.com
justin.bernick@hoganlovells.com
colleen.sinzdak@hoganlovells.com
zachary.best@hoganlovells.com
mitchell.reich@hoganlovells.com
elizabeth.hagerty@hoganlovells.com
kaitlin.welborn@hoganlovells.com

Thomas P. Schmidt*
875 Third Avenue
New York, NY 10022
Telephone: (212) 918-5547
Facsimile: (212) 918-3100
thomas.schmidt@hoganlovells.com

* *pro hac vice application forthcoming*

*Counsel for Plaintiffs*

9